[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10763
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00697-GMB

MICHAEL F. EARLE,
CARLA EVANS,

                                              Plaintiffs - Appellants,

versus

BIRMINGHAM BOARD OF EDUCATION, THE,
LISA HERRING, ED.D,
in her official and individual capacity as Superintendent
of the Birmingham City Schools,

                                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 19, 2021)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Earle and Carla Evans, jointly represented by counsel, appeal the grant of summary judgment in favor of their employer, the Birmingham Board of Education (Board).[1]

## I.

Earle and Evans are Security Officers for the Board. They brought suit in 2018, claiming that the Board discriminated against them by paying them more than $10,000 a year less than fellow Security Officer Keiff Smith, in violation of Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. Smith is an African American male; Earle is a white male and Evans is a white female. Earle and Evans alleged that they were discriminated against because of their race and that the Board's motivation for paying Smith more was intentional discrimination. Evans also alleged that she was discriminated against because of her gender.

The parties consented to having a magistrate judge preside over their case and enter a final judgment in accordance with 28 U.S.C. § 636(c). After discovery,

---

[1] Earle and Evans also named Lisa Herring, Superintendent of Birmingham City Schools, as a defendant in their amended complaint. The magistrate judge granted summary judgment to Herring, in addition to the Board. However, Earle and Evans challenged only the ruling as to the Board in their initial brief on appeal. While they challenged the ruling as to Herring in their reply brief, the claim is deemed abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (discussing abandonment); *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (per curiam) (applying rule to issues raised for the first time in a reply brief).

the Board moved for summary judgment, arguing that Earle and Evans had failed to make a prima facie case of discrimination because they were not similarly situated to their alleged comparator (Smith). Earle and Evans opposed the motion, arguing that they were similarly situated to Smith because they did the "exact same job." They alleged that Smith was only paid more because of "an African American power structure that ensured that Smith . . . received considerably more compensation," and not because of any alleged oversight by the Board. The Board replied that Earle and Evans had failed to demonstrate that their proffered explanation was pretextual.

The magistrate judge granted summary judgment to the Board. Specifically, the judge found that Smith was not a proper comparator because he had a different employment history and was subject to different employment policies. As a result, Earle and Evans had not established a prima facie case of discrimination. In a footnote, the judge noted that even if Earle and Evans had established a prima facie case, the Board articulated a legitimate, non-discriminatory reason for the pay disparity and Earle and Evans showed no evidence that the proffered reason—an administrative oversight—was pretextual. Earle and Evans appealed.

On appeal, they argue that the magistrate judge erred in granting summary judgment to the Board because 1) they did establish a prima facie case of race and gender-based discrimination by using a similarly situated comparator, and 2) the

3

Board's reason for paying the similarly situated comparator a higher salary was pretextual.

## II.

We review de novo a lower court's grant of summary judgment. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant. *Alvarez*, 610 F.3d at 1263–64. Courts "may not weigh conflicting evidence or make credibility determinations of [their] own." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). When a movant has shown that no genuine dispute of material fact exists, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

## III.

Title VII precludes employers from intentionally discriminating against an employee with respect to his or her compensation "because of" his or her race or sex. 42 U.S.C. § 2000e-2(a)(1). Likewise, under 42 U.S.C. § 1981, an employee has a right to be free of discrimination by an employer based on race in the

4

performance of a contract. 42 U.S.C. § 1981(a),(c). Moreover, under § 1983, officials acting under color of state law are prohibited from depriving another of their constitutional rights. 42 U.S.C. § 1983. Claims brought under Title VII and 42 U.S.C. §§ 1981, 1983 each require proof of discriminatory intent and are subject to the same analytical framework. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

Where the plaintiff supports her Title VII claim with circumstantial evidence, courts generally apply the *McDonnell Douglas* burden-shifting framework. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The plaintiff bears the initial burden of presenting evidence sufficient to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

A prima facie discrimination claim under Title VII generally requires a plaintiff to show that: (1) he or she is a member of a protected class; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the job; and (4) the employer treated similarly situated employees outside the protected class more favorably. *Lewis*, 918 F.3d at 1220–21.

To meet the fourth prong, a comparator must be "similarly situated in all material respects," meaning that the plaintiff and comparators are "sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.* at

1218, 1228 (quotation marks omitted). Although this standard requires a case-by-case analysis and formal labels regarding job title are unnecessary, a similarly situated comparator will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history. *Id.* at 1227–28. These considerations give employers "necessary breathing space to make appropriate business judgments." *Id.* at 1228. A plaintiff's failure to produce evidence showing that a single similarly situated employee was treated more favorably will preclude the establishment of a prima facie case. *Id.* at 1224.

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the plaintiff must show that the defendant's reason was pretextual. *Id*. at 804.

## IV.

Here, the magistrate judge did not err in granting summary judgment to the Board. Earle and Evans failed to establish a prima facie case of race or sex-based discrimination because they did not point to a similarly situated comparator.[2] As a

---

[2] Because we hold that Earle and Evans failed to state a prima facie case, we need not consider their pretext arguments.

result, the magistrate judge correctly determined that there was no genuine issue of material fact and we affirm its grant of summary judgment in favor of the Board.

Earle and Evans could not show that the Board treated any similarly situated employee—in this case, Smith—more favorably, because Smith was not a proper comparator. *See Lewis*, 918 F.3d at 1228. Smith was not "similarly situated in all material respects" to Earle or Evans. *See id.* at 1218. He differed from them in two material respects. *See id*. at 1227–28.

First, his employment history differed from theirs. While Earle and Evans both spent their entire tenure with the Board as Security Officers, Smith was transferred multiple times and spent four years serving as an Attendance Officer— a higher paid position.

Second, Smith was subject to materially different policies than Earle and Evans. When Smith returned to the lower paying Security Officer position in 2007, the Board had a policy in effect that allowed employees to retain their higher salaries if they were transferred to a lower-paying position. Accordingly, Smith was paid more than other Security Officers, including Earle and Evans. The three employees were not subject to the same pay policy until 2013, when the State mandated that all salaries be realigned.[3]

---

[3] In 2012, the State Board of Education intervened in the Board's financial operations. One of the measures imposed by the State in 2013 was a formal mandate that all salaries be aligned to

7

While Smith's salary was eventually reduced, Earle and Evans point out in their briefs that the required reduction in Smith's salary was delayed by years. The Board explained that the salary overhaul had been a large undertaking, involving the review and change of thousands of employees' salaries and, inadvertently, some people like Smith were missed in the process.[4] After a legal challenge by Smith that further delayed his salary change, his salary was reduced to the correct, lower pay grade in 2018.

Earle and Evans were not similarly situated to Smith in all material respects because of their different employment histories and the different policies they were subject to. Accordingly, their disparate treatment was not discrimination—it involved treating different things differently, not the same things differently. *See Lewis*, 918 F.3d at 1225.

Earle and Evans did not make out a prima facie case of either race or sex-based discrimination as a matter of law. Accordingly, we affirm the lower court's grant of summary judgment.

**AFFIRMED.**

---

conform to the salary schedule applicable to the duties currently being performed by employees—regardless of policies that had previously been in effect.

[4] Of the eighteen employees missed in the initial review and salary change, thirteen were African American, four were white, and one was Pacific Islander.

8